UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRIS BENNETT, | CASE NO. 1:15CV1107 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| CAROLYN W. COLVIN,[1] ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Plaintiff Chris Bennett ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). ECF Dkt. #1. In his brief on the merits, filed on November 4, 2015, Plaintiff asserts that the administrative law judge ("ALJ") erred in: (1) adopting the findings of a prior [ALJ] as to Plaintiff's psychological impairments; and (2) not evaluating the findings of the Veteran's Administration ("VA").[2] ECF Dkt. #16. Defendant filed a response brief on February 2, 2016. ECF Dkt. #19. Plaintiff did not file a brief in reply.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2]Plaintiff repeatedly refers to the "Veteran's Administration" throughout his brief on the merits. It is presumed that Plaintiff is referring to the United States Department of Veterans Affairs, as this is the agency that provides benefits for eligible veterans. U.S. Department of Veterans Affairs, http://www.benefits.va.gov/benefits/ (last visited August 17, 2016).

**I.     FACTUAL AND PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on March 13, 2012. ECF Dkt. #10 ("Tr.") at 169.[3] In both applications, Plaintiff alleged disability beginning January 31, 2009. *Id.* Plaintiff's claims were denied initially and upon reconsideration. *Id.* Plaintiff then requested a hearing before an ALJ, which was held on November 27, 2013. *Id.*

On February 14, 2014, the ALJ denied Plaintiff's applications for DIB and SSI. Tr. at 169.[4] The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. *Id.* at 171. Continuing, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 31, 2009, the alleged onset date. *Id.* Next, the ALJ found that Plaintiff had the following severe impairments: bilateral pes planus hallux valgus; second toe hammer toe; a mood disorder v. a dysthymic disorder; and a personality disorder. *Id.*

Following the assignment of the aforementioned severe impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 171. The ALJ indicated that he considered Listing 1.02 (major dysfunction of a joint), and that there were reports that Plaintiff's ankle impairments were stable and that he was asymptomatic. *Id.* at 172. Continuing, the ALJ stated that the severity of Plaintiff's mental impairments did not meet or medically equal the criteria of Listing 12.04 (affective disorders) or Listing 12.08 (personality disorders), and that the "paragraph B" criteria were considered when making this finding. *Id.* The ALJ explained that to satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id.*

---

[3] All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

[4] The ALJ's February 14, 2014 decision appears twice in the Transcript, although the decision is mislabeled the first time it appears in the Transcript. *See* Tr. at 39-56, 166-84.

In activities of daily living, the ALJ found that Plaintiff had mild restrictions, stating that Plaintiff cared for his son, prepared meals, took public transportation, shopped, and was a full-time college student. Tr. At 172. The ALJ determined that Plaintiff had moderate difficulties in social functioning, indicating that Plaintiff shopped, attended college on a full-time basis, and took public transportation. *Id.* For these same reasons, with the addition that Plaintiff could count change, the ALJ found that Plaintiff had moderate difficulties in concentration, persistence, and pace. *Id.* As for episodes of decompensation, the ALJ indicated that Plaintiff had experienced no episodes of decompensation of extended duration as no episodes appeared in the record. *Id.* The ALJ stated that he also considered the "paragraph C" criteria and found that Plaintiff did not meet the criteria because he was able to shop, attend college, and take his son to community centers. *Id.*

After considering the record, the ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that he: must use a cane in his right (dominant) hand when standing; can never climb ladders, ropes, or scaffolds; was limited to low stress tasks that involved only superficial interaction with supervisors, co-workers, and the public; was precluded from tasks that involve [fast] paced production environments, arbitration, negotiation, confrontation, directing the work of others, or that involved being responsible for the work of others. Tr. at 173. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments were not entirely credible. *Id.*

Continuing, the ALJ noted that Plaintiff's previous disability applications, filed on September 19, 2001, were denied at the state agency level, and subsequently a hearing was held before a different ALJ. Tr. at 173. The ALJ indicated that on February 9, 2004, the ALJ considering Plaintiff's September 19, 2001 disability applications issued a decision that was adverse to Plaintiff. *Id.* In the February 9, 2004 decision, the ALJ found that Plaintiff was capable of work at all exertional limitations, but was limited to: work in a low-stress environment with low production quotas; minimal interaction with co-workers, supervisors, and the public; and tasks that did not involve arbitration, negotiation, confrontation, or being responsible for the safety of others.

*Id.* Following this discussion of the February 9, 2004 decision issued by the previous ALJ, the ALJ who issued the final decision currently before the Court stated that he was obligated by Sixth Circuit precedent to accept the findings of a previous ALJ absent any change in Plaintiff's condition. *Id.* at 174. Continuing, the ALJ noted that the reviewing state agency psychologist adopted the findings of the previous ALJ regarding Plaintiff's mental impairments because there had been no change in Plaintiff's mental condition, and then expressed that he was in agreement that there had been no change in Plaintiff's mental condition. *Id.* The ALJ further noted that the reviewing state agency physician did not agree with the February 9, 2004 decision that Plaintiff was capable of work at all exertional levels, but rather opined that Plaintiff was capable of light work. *Id.* The ALJ stated that he disagreed with the reviewing state agency physicians opinion that Plaintiff was capable of light work, and instead found that Plaintiff was more limited and thus only capable of sedentary work. *Id.*

Next, the ALJ stated that Plaintiff had bilateral pes planus hallux valgus and second toe hammer toe configuration. Tr. at 174. The ALJ indicated that Plaintiff testified at the hearing that he had been using a cane for "eleven years" and that the cane was prescribed by the VA. *Id.* Continuing, the ALJ stated that Plaintiff's testimony regarding his use of a cane is contradicted by the record, which indicated that he was using orthotics, but was not using a cane. *Id.* The ALJ also noted that Plaintiff appeared at the hearing without his cane, and testified that his feet were "okay" with the use of the orthotics. *Id.* Further the ALJ indicated that there was differing data regarding Plaintiff's feet and ankles, and that this differing data was recognized by the VA. *Id.* The ALJ stated that examinations of Plaintiff's feet and ankles showed normal muscle strength and normal neurological statuses, and that Plaintiff had been described as asymptomatic with the use of orthotics. *Id.* Despite the above cited evidence in the record, and "in concession to [Plaintiff]," the ALJ limited Plaintiff to sedentary work with the limitations as described in the RFC finding. *Id.*

The ALJ next indicated that Plaintiff testified that he believed people were against him, but noted that no treating source opined that Plaintiff was paranoid. Tr. at 174. Instead, according to the ALJ, treating sources describe Plaintiff as having a personality disorder with narcissistic features, meaning that he has an inflated sense of self-importance. *Id.* Continuing, the ALJ

-4-

indicated that Plaintiff was seen in an emergency room on June 6, 2011 due to suicidal ideations, but was not hospitalized. *Id.* The ALJ noted that, upon discharge, Plaintiff global assessment of functioning ("GAF") score was fifty-five, and that, otherwise, Plaintiff's physician reported a GAF score of sixty, indicating mild to moderate symptoms. *Id.*

The ALJ stated that Plaintiff has not always been compliant with his mental health treatments, but was nonetheless described as cooperative, engaging, fluent, spontaneous, and logical, with intact cognition and no psychoses. Tr. at 174. Continuing, the ALJ indicated that the record showed that during the time under consideration, Plaintiff attended college on a full-time basis, cared for his son, prepared meals, shopped, took public transportation, and cared for his own hygiene. *Id.* The ALJ then stated that limiting Plaintiff to low-stress tasks and minimizing his interaction with others would adequately accommodate Plaintiff's mental impairments. *Id.* at 175.

After the discussion of Plaintiff's RFC, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. at 176. Continuing, the ALJ found that Plaintiff was a younger individual on the alleged disability onset date, had a high school education and could communicate in English, and that the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. *Id.* Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 31, 2009, the alleged disability onset date, through the date of the decision. *Id.* at 177.

On June 2, 2015, Plaintiff filed the instant suit seeking review of the February 14, 2014 decision by the ALJ. ECF Dkt. #1. Plaintiff filed a brief on the merits on November 4, 2015 posing the following questions for resolution by the Court:

1. Whether the [ALJ] erred in adopting the findings of a prior [ALJ] as to Plaintiff's psychological impairments.

2. Whether the [ALJ] erred in not evaluating the findings of the [VA].

-5-

ECF Dkt. #16. Defendant filed a response brief on December 2, 2015. ECF Dkt. #19. Plaintiff did not file a brief in reply.

## II. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## III. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found the plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra* (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (internal citations omitted)).

**IV.   LAW AND ANALYSIS**

   **A.   Adoption of the Prior ALJ's Findings**

The first issue presented by Plaintiff is whether the ALJ erred in adopting the findings of the prior ALJ as to Plaintiff's psychological impairments. ECF Dkt. #16 at 11-15. Plaintiff asserts that the adoption of the prior ALJ's findings by the ALJ that issued the February 14, 2014 decision was in error. *Id.* at 13. In support of this assertion, Plaintiff states that the relevance of the prior determination was minimal at best since disabilities change over time and, in the ten-year period since the prior determination, Plaintiff had been employed and earned substantial wages. *Id.* Continuing, Plaintiff states that he has also been diagnosed with severe foot problems, and his physical pain has been noted to adversely impact his psychological functioning. *Id.*

Continuing, Plaintiff indicates that since the prior determination, he has been seen in emergency rooms for suicidal ideation on two occasions. ECF Dkt. #16 at 13. Additionally, Plaintiff asserts that he has been diagnosed with an anxiety disorder, and his symptoms of stress resulting from the disorder predominate over his depression or personality issues. *Id.* Plaintiff argues that the prior ALJ noted no anxiety disorder, finding that Plaintiff suffered from only an

-7-

adjustment disorder with depressed mood, depressive disorder, not otherwise specified, and a personality disorder with narcissistic and anti-social traits. *Id.* at 14.  Continuing, Plaintiff asserts that anxiety disorders are evaluated under Listing 12.06, and the ALJ only considered Listing 12.04 and Listing 12.08.  *Id.*  Further, Plaintiff argues that the ALJ did not incorporate limitations into the RFC finding that would adequately account for Plaintiff's anxiety disorder and that the ALJ's limitation of Plaintiff to low-stress work was not sufficient to address Plaintiff's limitations due to his anxiety disorder.  *Id.*

Next, Plaintiff asserts that the ALJ indicated that in adopting the prior ALJ's psychological findings he was in agreement with the reviewing state agency physician, however, the reviewing state agency physician did not adopt the prior ALJ's findings, instead indicating that there was evidence of an improvement in Plaintiff's mental health.  ECF Dkt. #16 at 14.  Additionally, Plaintiff claims that the reviewing state agency physician also failed to note Plaintiff's anxiety disorder.  *Id.*  Finally, Plaintiff asserts that the reviewing state agency physician focused a good deal of attention on Plaintiff's college studies, but in 2013 Plaintiff's mental health resulted in the VA terminating his participation in the program and Plaintiff was forced to cease his college studies as a result.  *Id.*

Defendant claims that substantial evidence supports the ALJ's findings with respect to Plaintiff's mental functioning.  ECF Dkt. #19 at 15.  Defendant contends that Plaintiff's position ignores the overwhelming evidence that his mental health has improved significantly in the ten years since the prior ALJ's 2004 decision to the extent that Plaintiff was attending college full-time, and that Plaintiff cites only two isolated instances of emergency treatment in a five-year record to show that his condition worsened. *Id.* at 16.  Specifically, Defendant indicates that the two instances Plaintiff references are: (1) an occasion in April 2009 when he went to the VA emergency psychiatry department for vague suicidal thoughts, but denied suicidal intent upon examination; and (2) an emergency psychiatric evaluation that Plaintiff agreed to undergo after expressing passing suicidal thoughts, during which Plaintiff denied having suicidal thoughts, and afterwards Plaintiff was discharged that same day.  *Id.*

As for improvement in Plaintiff's mental condition, Defendant states that a recurring theme in the record is that Plaintiff did not want to work a low paying job, but rather wanted to go to

-8-

college and earn a degree to work in broadcasting or a degree in computer science to work as an information technology specialist. ECF Dkt. #19 at 17. Defendant asserts that Plaintiff wanted to start college with funding from the VA to meet his career goals, and began attending college at some point between October 2010 and June 2011. *Id.* Continuing, Defendant indicates that Plaintiff performed well in college and completed at least one full year of college, all after his alleged disability onset date. *Id.*

Defendant also claims that the record demonstrates that Plaintiff was for the most part "doing fine" from a mental standpoint, and it was often Plaintiff's financial pressures that caused him stress and frustration. ECF Dkt. #19 at 17. Citing the record, Defendant states that, consistent with Plaintiff's overall good mental functioning, he took medication minimally (meaning at most two to three times per week, decreasing to one to two times per week, and then rarely taking the medication or not taking it at all). *Id.* Defendant also maintains that, contrary to Plaintiff's assertion, Plaintiff delayed his college studies in February 2013 due to financial problems, rather than mental health issues. *Id.* at 18.

Continuing, Defendant also asserts that additional evidence conflicts with Plaintiff's claim of total disability. ECF Dkt. #19 at 18. Defendant states that the ALJ relied on evidence that Plaintiff was a full-time college student while alleging to be totally disabled, and also cared for his son, prepared meals, cared for his own hygiene, and took public transportation, including 2.5 hour trips to and from campus while Plaintiff was attending college. *Id.* According to Defendant, these are not the type of activities that one would expect a totally disabled individual to be able to perform. *Id.*

Additionally, Defendant argues that, in light of the above discussed evidence, the ALJ gave Plaintiff every benefit of the doubt by restricting him to the prior ALJ's highly restrictive RFC finding. ECF Dkt. #19 at 19. Defendant also claims that the opinion of the reviewing state agency physician was consistent with the ALJ's mental RFC findings, despite the fact that the reviewing state agency physician's opinion that Plaintiff's condition had improved. *Id.* Further, Defendant asserts that Plaintiff's argument that the ALJ could not rely on the reviewing state agency physician's opinion as justification to support his findings is illogical, and that the fact that the

-9-

reviewing state agency physician found improvements in Plaintiff's condition and rendered a less restrictive mental RFC does not render the ALJ's more restrictive RFC finding not supported. *Id.* Defendant argues that the ALJ rendering a more restrictive RFC shows that he wanted to give Plaintiff every benefit of the doubt, and thus included more mental restrictions than the reviewing state agency physician. *Id.*

Finally, Defendant asserts that Plaintiff's isolated diagnosis of anxiety disorder is of no significance because the mere diagnosis of a condition does not prove that a condition caused disabling limitations. ECF Dkt. #19 at 20 (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988)). Defendant notes that Plaintiff did not mention anxiety as an impairment that caused him any limitations when he applied for benefits. ECF Dkt. #19 at 20 (citing Tr. at 459.

Plaintiff's arguments are without merit. First, Plaintiff asserts that the relevance of the prior ALJ's determination "was always going to be minimal at best, since disabilities change over time, and in the 10-year period between the two decisions Plaintiff had been employed, earning substantial wages until 2009." ECF Dkt. #16 at 13. Plaintiff cites no support for the assertion that the relevance of a prior ALJ's determination diminishes due to the length of time between that decision and the subsequent ALJ's decision. Further, Plaintiff's contention that the ten-year period between the decision demonstrates that the prior ALJ's decision is minimally relevant is undermined by the language of Social Security Acquiescence Rule ("AR") 98-4(6):

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.[5]

Nothing in AR 98-4(6) suggests that the passage of time diminishes the relevancy of a prior decision, and, rather, indicates that the subsequent ALJ is bound by the prior ALJ's finding unless there: (1) is new and material evidence to such a finding; or (2) has been a change in the law,

---

[5]AR 98-4(6) addresses the effects of prior findings on the adjudication of a subsequent disability claim in light of the Sixth Circuit's ruling in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).

regulations, or rulings affecting the finding or the method for arriving at the finding.  Plaintiff does not argue that there has been a change in the law, regulations, or rulings affecting the finding or the method for arriving at the finding.  Instead Plaintiff argues that new evidence indicates a worsening of Plaintiff's mental health conditions since the prior determination.  ECF Dkt. #16 at 12-15.

Insofar as evidence that his condition worsened, Plaintiff first asserts that his foot pain was adversely affecting his psychological functioning, and that his physical pain decreased when his psychological stress was reduced.  ECF Dkt. #16 at 13.  In support of this assertion, Plaintiff cites a single psychologist consultation note in which Plaintiff stated that his "pain worsens with stress and frustration."  *Id.* (citing Tr. at 1799).  Next, Plaintiff indicates that he obtained emergency treatment in April 2009 and June 2011 for suicidal ideations.  *Id.*  However, as admitted by Plaintiff, he denied suicidal thoughts at both of these visits, and, upon inspection of the record, Plaintiff was never found to be a suicide risk.  *Id.;* Tr. at 556, 558, 560-61, 1716.  Plaintiff also claims that he was diagnosed with anxiety disorder and that the ALJ failed to properly evaluate his anxiety disorder under Listing 12.06, instead only assessing whether Plaintiff met Listing 12.04 and/or Listing 12.08.  ECF Dkt. #16 at 14.

Plaintiff fails to demonstrate how this evidence is new and material.  The claim that Plaintiff's foot pain was adversely affecting his psychological functioning is based purely on Plaintiff's subjective statements about his pain.  *See* ECF Dkt. #16 at 13 (citing Tr. at 1799).  In support of this claim, Plaintiff cites a single psychologist consultation note in which Plaintiff stated that his "pain worsens with stress and frustration."  *Id.* (citing Tr. at 1799).  As far as the two occasions on which Plaintiff obtained emergency treatment, Plaintiff denied suicidal ideation during both visits, spending a single night under observation in April 2009 and being discharged the same day in June 2011.  *See* Tr. at 542-561, 1711-16.

As far as Plaintiff's anxiety, Defendant correctly asserts that Plaintiff's isolated diagnoses of anxiety does not prove that the condition caused disabling limitations.  *See* ECF Dkt. #19 at 20. Plaintiff cites two locations in the record as evidence of Plaintiff's anxiety: (1) an instance where Plaintiff presented with symptoms of panic; and (2) a determination finding panic disorder.  ECF Dkt. #16 at 13 (citing Tr. at 1678, 1716).  Continuing, Plaintiff then asserts that his "symptoms of

-11-

anxiety due to what [Plaintiff] describes as 'stress' predominate over his depression or personality issues." ECF Dkt. #16 at 13 (citing Tr. at 1799).  As support for his claim that his anxiety predominates over his depression and personality, Plaintiff cites documentation of his own subjective statements, and, moreover, Plaintiff did not equate his "stress" with a diagnosed condition of anxiety in those statements.  *See* Tr. at 1799.  Plaintiff provides no argument as to how his alleged anxiety meets or medically equals a listed impairment, instead asserting that the ALJ erred in failing to consider Listing 12.08.  ECF Dkt. #16 at 14.  It is Plaintiff's burden to demonstrate that the medical evidence satisfied the elements of Listing 12.08.  *See Berry v. Comm'r of Soc. Sec.*, 34 Fed.Appx. 202, No. 01-1711, 2002 WL 857743, at *203 (6th Cir. 2002).  Plaintiff provides no argument as to how the elements of Listing 12.08 are satisfied, instead relying on two general diagnoses of anxiety and Plaintiff's subjective statements about his stress.  Additionally, the Court finds that Defendant is correct in asserting that Plaintiff's argument is undermined by the fact that Plaintiff did not mention anxiety as an impairment that caused him any limitations when he applied for benefits.  Tr. at 459.  It does not appear that Plaintiff believed that his anxiety constituted a mental condition at the time he applied for benefits, and the medical evidence does not indicate that Plaintiff's alleged anxiety dictates more restrictive limitations than those imposed by the ALJ.

      Plaintiff also asserts that the ALJ could not rely on the reviewing state agency physician as justification for adopting the prior ALJ's decision because the reviewing state agency physician did not specifically find that no change occurred, but instead found improvement in Plaintiff's condition.  ECF Dkt. #16 at 15.  Defendant asserts that Plaintiff's position is illogical.  Plaintiff is essentially arguing that the ALJ erred by adopting an RFC imposing limitations that are more restrictive than the limitations offered by the reviewing state agency physician.  The ALJ's RFC finding was more favorable to Plaintiff than a RFC finding based on the opinion of the reviewing state agency physician.  Plaintiff has failed to show how the ALJ's imposition of a more restrictive

-12-

RFC constituted error.[6]  Accordingly, Plaintiff has failed to demonstrate that the ALJ erred by adopting the prior ALJ's determination as to Plaintiff's mental conditions.

### B. Findings of the VA

Plaintiff also asserts that the ALJ erred in not evaluating the importance of the VA's determination that Plaintiff's mental health precluded him from participating in vocational rehabilitation. ECF Dkt. #16 at 16. In support of his position, Plaintiff states that the VA terminated Plaintiff's participation in its Chapter 31 vocational rehabilitation program on three separate occasions. ECF Dkt. #16 at 16. Continuing, Plaintiff claims that the ALJ referred several times to the fact that the Plaintiff was attending college being the reason to doubt Plaintiff's credibility as to the severity of his limitations. *Id.* Plaintiff asserts that the ALJ never acknowledged that, by the time of the hearing, Plaintiff's psychological impairments had interfered with the continuation of his studies. *Id.* Further, according to Plaintiff, the ALJ never mentioned that the VA had thrice terminated Plaintiff's participation in the vocational rehabilitation program after finding it unfeasible for Plaintiff to continue the program. *Id.*

Next, Plaintiff recognizes that he had, from time to time, been noncompliant with his mental health treatment recommendations. ECF Dkt. #16 at 16. Plaintiff claims that his narcissistic personality disorder is the reason for his attitude towards his treatment. *Id.* at 17. Finally, Plaintiff asserts that the ALJ erred by failing to evaluate the findings of the VA as to Plaintiff's capacity for vocational rehabilitation, as required by Social Security Rule ("SSR") 06-03p, and that this error was prejudicial to Plaintiff. *Id.* at 17-18.

---

[6]The Court recognizes that in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997), the Sixth Circuit held that "[a]bsent evidence of improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." In *Drummond*, the Commissioner was attempting to impose a less-restrictive RFC on the claimant absent evidence that Plaintiff's condition had improved. The instant case is factually distinguishable from *Drummond*. Here, the ALJ made the same RFC determination as the previous ALJ despite evidence that Plaintiff's condition had improved. As such, the ALJ's RFC finding in the instant case was not prejudicial, but rather favorable to Plaintiff - the exact opposite of the circumstances presented in *Drummond*. In essence, while specific quotations from *Drummond* may appear to indicate that any improvement on behalf of a Plaintiff means that the ALJ is not bound by the findings of a previous ALJ, a reading of *Drummond* as a whole does not support this contention.

Defendant contends that the VA determinations were not regarding whether Plaintiff was disabled, but rather showed that, at times, Plaintiff did not comply with the procedural requirements to obtain VA rehabilitation or funding. ECF Dkt. #19 at 20. Defendant cites 20 C.F.R. §§ 404.1504 and 416.904, which both read:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

ECF Dkt. #19 at 21. Defendant asserts that the significance of the of the VA determinations is dubious at best, and, as such, the ALJ was not required to discuss the opinions related to Plaintiff's eligibility for VA funded programs issued by vocational and rehabilitation counselors. *Id.* at 23. Additionally, Plaintiff claims that the VA determinations simply do not provide good evidence in support of Plaintiff's claim that he is disabled, and certainly do not overcome the overwhelming evidence of the improvement in Plaintiff's mental condition to the extent that he was able attend college classes as a full-time student. *Id.*

As an initial matter, Plaintiff's assertion that his noncompliance with treatment recommendations is a feature of his narcissistic personality order is not well taken. *See* ECF Dkt. #16 at 17. Plaintiff provides no explanation as to how noncompliance is a feature of the disorder, any medical evidence supporting the claim, or any source in general explaining how or why the disorder would cause Plaintiff to not comply with his recommended treatment.[7]

Even assuming *arguendo* that Plaintiff is correct in asserting that the ALJ erred in not discussing the VA determinations, the error was harmless because a discussion of the determinations could not have resulted in a finding that Plaintiff was disabled. Plaintiff's participation in the vocational rehabilitation program was terminated in 2009 because it was

---

[7]The Court recognizes that Plaintiff is not asserting that the ALJ denied benefits based on Plaintiff's noncompliance. *See* ECF Dkt. #16 at 17. The issue of noncompliance is addressed because one of the three VA determinations, specifically the 2011 determination, indicates that Plaintiff was being terminated from the vocational rehabilitation program because he missed a mental health appointment. *See* Tr. at 1220-22.

-14-

determined that it was not feasible for Plaintiff to benefit from the program.[8]  Tr. at 539-40.  No medical reasons were discussed when informing Plaintiff why he was being terminated from the vocational rehabilitation program in 2009.  *Id.*

By October 2010, Plaintiff was again participating in the vocational rehabilitation program. Tr. at 1241.  Plaintiff admits that he was terminated from the vocational rehabilitation program again in 2011 because he missed a mental health appointment, and states in his brief that he became suicidal after the June 2011 termination.  ECF Dkt. #16 at 16.  Accordingly, Plaintiff was not terminated for medical reasons, and was instead terminated for procedural reasons since he did not comply with the medical requirements to remain in the vocational rehabilitation program.  Since the determination was not based on Plaintiff's mental impairments, it would not have been useful for consideration by the ALJ.  Plaintiff's assertion that he became suicidal after being terminated in June 2011 is not supported by the medical record.  During the same examination at which he discussed the June 2011 termination, Plaintiff denied suicidal ideation and did not express any thoughts of self-harm.  Tr. at 1220-22.  The examination report does indicate that Plaintiff struggled with suicidal thoughts, but does not indicate that Plaintiff "became suicidal," rather, stating that Plaintiff did not express suicidal tendencies at the time of the examination.  *Id.*

After again being re-admitted to the vocational rehabilitation program, Plaintiff was informed in 2013 that it was not feasible for him to benefit from a vocational rehabilitation program at that time due to his "current mental health condition."  Tr. at 1825.  Like the 2009 termination letter, the 2013 termination letter does not discuss the specific medical reasons for the termination outside of citing Plaintiff's mental health condition.  *See id.*

Plaintiff is correct in asserting that SSR 06-03p indicates that opinions from "non-medical sources" such as social welfare agency personnel are "valuable sources of evidence for assessing

---

[8]Both Plaintiff and Defendant cite to a letter from the VA dated November 20, 2008 when discussing Plaintiff's termination from the vocational rehabilitation program in 2009.  ECF Dkt. #16 at 16 (citing Tr. at 540); ECF Dkt. #19 at 21 (citing Tr. at 540).  Defendant also cites to a letter dated February 2, 2009 discontinuing Plaintiff's participation in the vocational rehabilitation program.  ECF Dkt. #19 at 21 (citing Tr. at 359).  In any event, both letters indicated that Plaintiff's participation in the vocational rehabilitation program was being discontinued without providing specific medical reasons.  *See* Tr. at 539-40.

impairment severity and functioning" and that information from non-medical sources "can be important" in supporting or contradicting a medical opinion. It is also correct that the ultimate question of disability is a determination rightfully made by Defendant. 20 C.F.R. §§ 404.1504, 416.904. The VA determinations that Plaintiff claims are the source of error on behalf of the ALJ are not valuable sources of evidence as none of the determinations present evidence that Plaintiff is disabled; instead the determinations merely indicate that Plaintiff did not qualify for continued participation in the vocational rehabilitation program. Even if Plaintiff is correct in asserting that the ALJ erred in failing to consider the VA determinations, this error was harmless as the determinations are of little to no value, especially considering the weight of the medical evidence indicating that Plaintiff was not disabled. Accordingly, Plaintiff has failed to show that the ALJ erred by not evaluating the findings of the VA.

## V.    CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.


Date: August 22, 2016                              */s/George J. Limbert*
                                                                             GEORGE J. LIMBERT
                                                                             UNITED STATES MAGISTRATE JUDGE